UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

CIVIL ACTION NO. 21-7-DLB-EBA

BILLY & ROXANNE BLANKENSHIP                                                    PLAINTIFFS

v.                    **MEMORANDUM OPINION AND ORDER**

STATE FARM FIRE & CASUALTY CO.                                                 DEFENDANT

\* \* \* \* \* \* \* \* \* \* \*

**I.    INTRODUCTION**

This matter is before the Court upon Defendant State Farm Fire and Casualty Company's ("State Farm") pending Motion for Partial Summary Judgment, Motion to Exclude Plaintiffs' Proposed Expert Tony Little, and Motion to Exclude Testimony by Vance Blair Regarding Causation. (Docs. # 32, 33, and 34). The motions have been fully briefed and are ripe for the Court's review. (Docs. # 37, 38, 39, 41, 42, and 43). For the reasons stated herein, Defendant's motions are **granted.**

**II.   FACTUAL AND PROCEDURAL BACKGROUND**

This dispute involves the contractual relationship between an insurance company and its insured. The insured, the Blankenships, filed a claim under their homeowners insurance policy for property damage to their home allegedly caused by a storm in January 2020. (Doc. # 1-1 at 1-2). Plaintiffs explain that their claim was partially denied even though they complied with all of State Farm's requests for information. (*Id.* at 2). The Blankenships then filed suit in state court which State Farm later removed to this

1

Court under its diversity jurisdiction.  (Docs. # 1 and 1-1).  The Complaint requests the following relief: State Farm to adjust the losses that the Blankenships incurred because of the storm; an award of pre-judgment and post-judgment interest; bifurcation of their bad faith and punitive damages claims (which later occurred); and a jury trial.  (Doc. # 1-1 at 2-3).  State Farm now seeks partial summary judgment on the Blankenships' claims related to the damage to the brick wall veneer on the southwest corner of the home as well as the adjacent asphalt driveway.  (Doc. # 32-1 at 1-2).  However, the Court will first address State Farm's pending Motions to Exclude (Docs. # 33 and 34) because their disposition will color the Court's summary judgment analysis.

### III.   ANALYSIS

#### A.   Motion to Exclude Plaintiff's Expert Witness Vance Blair

State Farm argues that "any testimony Plaintiffs would attempt to elicit from Mr. Blair as to causation for the subject damage is inadmissible under [Federal Rule of Evidence] 702."  (Doc. # 34 at 1-2).  State Farm relies on Blair's deposition testimony and expert report to support this assertion.  (*Id.* at 2-6).

Federal Rule of Evidence 702, as modified by *Daubert v. Merrell Dow Pharmaceuticals. Inc.*, 509 U.S. 579 (1993), lays out that expert testimony is admissible so long as (1) the expert's knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, (2) the testimony is based upon sufficient facts or data, (3) is the product of reliable principles and methods, and (4) the witness has applied the principles and methods reliably to the facts of the case.  Fed. R. Evid. 702.  The Sixth Circuit clarified that in assessing admissibility of expert opinions, the court should assess reliability, and not credibility or accuracy, as the inquiry is "not to determine whether [the

opinion] is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008). Generally, Rule 702 "should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 505, 516 (6th Cir. 1998) (quotations omitted).

"In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court explained that Rule 702 confers a 'gatekeeping role' on trial judges to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *United States v. Semrau*, 693 F.3d 510, 520 (6th Cir. 2012) (citing *Daubert*, 509 U.S. 579, 597 (1993)). "The inquiry is a 'flexible one' focused on 'principles and methodology.'" *Id*. (citing *Daubert*, 509 U.S. at 594-95). "There is no 'definitive checklist or test' for balancing the liberal admissibility standards for relevant evidence and the need to exclude misleading 'junk science.'" *Id*. (citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 177 (6th Cir. 2009)). The proponent of the evidence has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171. 175-76 (1987); *see also Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

Under this standard, State Farm's argument is simple enough—Blair exclusively relied on Mr. Blankenship's statements in making his causation determination and therefore fails to rely on sufficient facts and data. (Doc. # 34 at 4-6). The Blankenships respond that (1) State Farm has only sought exclusion of Blair's causation testimony, not his estimate of repair costs, and (2) State Farm's own expert contractor, Tommy

3

Middleton, also gave an opinion as to whether certain damage was related to the storm. (Doc. # 39 at 1-2).

The Blankenships are correct that State Farm is not seeking exclusion of Blair's repair estimates, so the Court will not discuss that part of his opinion. As to Blair's causation opinion, the Blankenships have failed to meet their burden of establishing its admissibility by a preponderance of the evidence, namely by failing to show Blair's opinion relies on anything but speculation. The Blankenships only argue that contractors generally know what causes damage to structures and that State Farm's expert, Tommy Middleton, also opined as to the cause of damage to the home. (Doc. # 39 at 2). In the alternative, the Blankenships ask the Court to limit the excluded testimony so Blair can still testify regarding other matters, such as the selection and condition of the house site and damage to other parts of the home. (*Id.*).

The issue for the Blankenships is reliability. State Farm argues that Blair based his opinion solely on Mr. Blankenship's self-serving statements; while the Blankenships respond with a classic "the pot is calling the kettle black." Even if Middleton, State Farm's contractor-expert, did speculate as to the cause of the damage to the Blankenships' home, that does nothing to bolster Blair's reliability. Nevertheless, the very first sentence of Middleton's report states "[t]he purpose of the estimate is *not to determine cause* and origin of property damages but rather estimate cost of repairs to the best of our knowledge and experience from a visual on site inspection." (Doc. # 32-11 at 1) (emphasis added). Even assuming State Farm's expert did not rely on sufficient facts or data, at best, this proves that neither expert should opine as to causation, not that Blair can still do so.

4

State Farm is correct that during his deposition Blair repeatedly acknowledged that his opinion is based on Mr. Blankenship's statements and that he did not even know whether the storm occurred. (Doc. # 34-2 at 2-4) ("I don't know if the storm even hit or not, to tell you the truth. I'm just taking it up on what he told me."). When asked if his opinion on whether the storm caused the damage was based on Mr. Blankenship telling him so, Blair responded: "Yes. Everything that he -- that's been said or notes made of is from what he told me." (*Id.* at 4). When Blair's statements are coupled with the Blankenships' lack of a response to State Farm's arguments decrying Blair's reliability, the Court cannot reach any conclusion other than that Blair's causation opinion is not sufficiently reliable to be admissible.

The Court finds that Blair almost exclusively relied on the self-serving speculation of Mr. Blankenship, which is simply not a reliable foundation, nor is it based on sufficient facts and data. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529-30. Blair's report also fails to list any basis for his conclusions other than his "personal review of the damage to [the] house, Mr. Blankenship's statements, and [his] professional experience with 45 years as a contractor." (Doc. # 32-9 at 7). However, this does nothing to explain *how* Blair made his conclusions, *e.g.*, his chain of reasoning. The Court will not allow ambiguous observations without any explicit chain of reasoning to qualify as an expert opinion because *Daubert* exists to prevent such "scientific guesswork." *Adler v. Elk Glenn, LLC*, 986 F. Supp. 2d 851, 857 (E.D. Ky 2013) (citing *Barnette v. Grizzly Processing, LLC*, No. 10-77, 2012 WL 293305, at *3 (E.D. Ky. Jan. 31, 2012)). As a result, State Farm's motion is **granted** and Blair's causation opinion is excluded.

5

B.  **Motion to Exclude Plaintiff's Expert Tony Little**

State Farm seeks exclusion of the Blankenships' expert Tony Little because his testimony considers the fair market value of the house; State Farm argues fair market value is irrelevant because the terms of the insurance contract define the proper measure of loss calculation as the actual cash value. (Doc. # 33 at 1-2). The Blankenships respond by conceding that Little did opine as to the fair market value of the house and that the insurance contract prohibits recovery based on that valuation. (Doc. # 38 at 1-2). They further explain that Little was hired to support the Blankenships' bad-faith claim, which has been bifurcated. (*Id.* at 1).

Still, the Blankenships argue that Little also opined as to the rental value of the property, and that State Farm did not seek to exclude that part of his testimony. (*Id.* at 2). They maintain that this testimony is probative of the issues in this matter because the insurance contract allows for loss of potential rental income. (*Id.*). State Farm responds that it wants Little entirely excluded as an expert, that the Blankenships failed to disclose that Little would offer any opinions about the rental value of the house, and that Little's testimony regarding rental value is unreliable under Rule 702 and *Daubert*. (Doc. # 42 at 1-6). Because the parties agree that Little's fair market value testimony should be excluded at this stage, the Court will only consider the arguments concerning his testimony regarding rental income.

Unfortunately for the Blankenships, Little's rental value testimony is unreliable. As the Blankenships themselves point out, "[a]t his deposition, Mr. Little noted that he *could not provide* an accurate valuation of the property on this [income approach] method due to a lack of comprehensive rental data." (Doc. # 38 at 2) (emphasis added). The

6

Blankenships then try to rehabilitate their argument by noting that Little has extensive experience with real estate and that he testified as to the fair rental value at his deposition anyway. (*Id.*). Even assuming *arguendo* that Little's experience qualified him, he used that same "extensive experience" to state at his deposition that when it comes to the income approach "there's not enough data and there's not enough--you just can't support it, that, with the income approach."  (Doc. # 42-1 at 2).[1]  Indeed, he left the "Income Approach to Value" section of his report entirely blank and admitted during his deposition that he did not provide an estimate on it.  (Docs. # 33-3 at 5, 33-4 at 2, and 38-2 at 7) ("We normally don't do the income approach because we just don't have the--enough information to complete that.").

So, the at-issue expert himself concluded that there was not enough data in the area to support a rental income valuation.  It almost goes without saying that there is a lack of sufficient facts and data under Rule 702 to support Little's off-the-cuff rental estimate given during his deposition.  (Doc. # 38-2 at 8) ("Well, like I said, that--every now and again I'll get one that I have to do that for, I have to find the income--I mean, the--find the rentals for, and based off of what I've seen in the last--probably between 1,000, $1500--").  While real estate values are generally based on speculation, they still utilize data points and comparative analysis.  *See Hescott*, 2012 WL 4955254, at *2.  Little clearly did not rely on such data because it was unavailable, as he explained.  Again, the Court will not allow ambiguous observations without any explicit chain of reasoning to qualify as an expert opinion.  *Adler*, 986 F. Supp. 2d at 857.

---

[1] The "income approach" utilizes an estimation of rental value, typically by comparing similar rental properties in the area to the subject property.  *Hescott v. City of Saginaw*, No. 10-13713, 2012 WL 4955254, at *2 (E.D. Mich. Oct. 17, 2012).

Alternatively, Federal Rule of Civil Procedure 26(a)(2)(B) requires disclosure of an expert report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them," among other requirements. Rule 37(c)(1) further explains that if a party fails to provide information as required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Here, the Blankenships' Rule 26(a) expert witness disclosures detail that Little would testify as to the fair market value of the home, the damage caused by the storm, resulting property values, and the monetary damages caused by Defendant's delay in paying the Blankenships' claims. (Doc. # 33-1 at 1). This report listed nothing about the potential rental value of the property and his attached report also left the income approach section blank. (Doc. # 33-3 at 5). After all, Little noted during his deposition that he did not provide an estimate based on the income approach and that he was not provided with any new information since he prepared his report, so his opinions had not changed since its issuance. (Doc. # 38-2 at 10). The Blankenships do not attempt to argue that this failure to disclose is justified or harmless, so this constitutes an independent reason to exclude Little's rental value testimony. Therefore, State Farm's motion is **granted** and Little's testimony as to rental value and fair market value is excluded.[2]

C.   **Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists where "the evidence is such

---

[2]   The issue of Little's testimony as it relates to the bad-faith claim is not considered in this analysis because that claim has been bifurcated.

8

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment "bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Plant v. Morton Int'l Inc.*, 212 F.3d 929, 934 (6th Cir. 2000)). On the other hand, "the party opposing summary judgment must show that she *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).[3]

In deciding a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the Court does not weigh the evidence or determine the truth of matters asserted. *Anderson*, 477 U.S. at 249. Following the Court's review of the record, if a "rational factfinder could not find for the nonmoving party, summary judgment is appropriate." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998). "When there is evidence to support each version of the parties' dueling allegations, summary judgment is not appropriate—even when the evidence includes self-serving statements from the parties." *Davis v. Gallagher*, 951 F.3d 743, 745 (6th Cir. 2020).

Here, the parties dispute whether the damage was (1) caused by "accidental direct physical loss" as required by the contract and (2) whether the anti-concurrent cause

---

[3] Therefore, the Court will not consider the Mr. Blair's causation opinion—nor the parties' arguments related to it—because that opinion has been found inadmissible at trial, as discussed in Part III, Section A of this Opinion.

9

("ACC") clause of the contract excludes coverage. (Docs. # 32-1, 37, and 43). The Court agrees that the ACC clause excludes the specific damage to the home.[4] The ACC clause explains that State Farm:

> will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. *We* will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss . . . .
>
> b. **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth. Earth movement includes but is not limited to:
>
> (1)  earthquake;
> (2)  landslide, mudslide, or mudflow;
> (3)  sinkhole or subsidence;
> (4)  movement resulting from:
>     (a)  improper compaction;
>     (b)  site selection;
>     (c)  natural resource extraction activities; or
>     (d)  excavation;
> (5)  erosion;
> (6)  pressure by surface or subsurface earth or fill; or
> (7)  any volcanic activity, except as specifically provided

(Doc. # 32-13 at 28). In short, the ACC clause stands for the proposition that when two causes of a loss exist and one is a covered event and the other is not, the clause precludes coverage. State Farm proffers that the damage to the driveway and brick veneer occurred because of earth movement exacerbated by water runoff. (Doc. # 32-1 at 11). Per the above quoted language, that occurrence is excluded under the terms of the contract because earth movement is not a covered event. (*Id.*). Indeed, State Farm's expert, Engineer Matthew Richardson, concluded that the cause of the damage to the

---

[4]  Because the ACC clause issue is dispositive of the pending motion, the Court need not address the parties' arguments related to "accidental physical loss" under the contract.

10

brick veneer was "the downward displacement of the foundation, which was the result of the combination of water saturating the soil due to a disconnected downspout and the nearby steep slope instability." (Doc. # 32-5 at 5). He also concluded that the driveway damage was "caused by a loss of support from the soil and base beneath the pavement . . . . The adjacent steep slope would also allow the supporting soil to displace westward." (*Id.*).

The Blankenships respond that (1) the Court should engage in an "efficient or proximate cause" analysis and (2) State Farm's contention that the earth movement began before the storm is hotly disputed which creates a genuine issue of material fact. (Doc. # 37 at 12-18).

The Blankenships' first argument is without merit. Generally, an ACC clause is enforceable. *See Cont'l Ref. Co., LLC v. Hartford Steam Boiler Inspection & Ins. Co.*, 350 F. Supp. 3d 601, 608 n.4 (E.D. Ky. 2018) (collecting cases), *aff'd,* 769 F. App'x 355 (6th Cir. 2019). The Court will abide by the terms of the parties' agreement; thus, the Court has no reason to engage in a proximate or efficient cause analysis, especially given that Kentucky has not explicitly adopted the concurrent proximate cause doctrine. *Id.* (citing *Johnson v. Capitol Specialty Ins. Corp.*, Nos. 2017-CA-171-MR, 2017-CA-172-MR, 2018 WL 3090503, at *6-7 (Ky. Ct. App. June 22, 2018)).[5]

---

[5]   The Blankenships argue that *Reynolds v. Travelers Indemnity Co. of America*, 233 S.W.3d 197, 203 (Ky. Ct. App. 2007), approves of the use of efficient proximate cause doctrine under Kentucky law. (Doc. # 37 at 13-14). However, the court later clarified that "*Reynolds* is an opinion of the Court of Appeals, and it *did not officially adopt* the doctrine; it approved of the reasoning in a case from our sister state . . . which applied the 'efficient proximate cause doctrine.'" *Johnson v. Capitol Specialty Ins. Corp.*, Nos. 2017-CA-171-MR, 2017-CA-172-MR, 2018 WL 3090503, at *6-7 (Ky. Ct. App. June 22, 2018) (emphasis added).

Second, the Blankenships' argument about the "hotly disputed" issue of whether the earth under the house began moving prior to the storm misses the mark. The timing is irrelevant. Instead, the crucial question to the Blankenships' claim is whether a genuine issue of material fact exists as to the *cause* of the damage. If not, then summary judgment is appropriate because the damage would not be covered under the terms of the insurance contract. Based on all the evidence, even taken in the light most favorable to the Blankenships, there is not a genuine issue of material fact as to this question. State Farm posits that earth movement mixed with water runoff is the cause of the cracking to both the brick veneer and driveway. The Blankenships fail to meaningfully contest State Farm's explanation.

As an initial matter, the evidence is clear that the cracking—and the movement of earth—occurred prior to the storm. The only evidence the Blankenships rely on that unequivocally asserts that the cracking of the brick veneer occurred exclusively after the storm is Mr. Blankenship's own testimony.[6] At his deposition, Mr. Blankenship repeatedly stated that he had never noticed any cracking before the storm. (Docs. # 32-7 at 1-2 and 37-2 at 15). Yet, this assertion is contradicted by the testimony of both Mr. Blankenship's daughter and her husband, the two tenants of the home. The daughter, Jamee Dempsey, testified that prior to the storm, she had "noticed [the cracking] a little bit." (Doc. # 43-1 at 2). She then confirmed that it was the same cracking at issue, in the same area, and she had seen it progress over years. (*Id.*). Chris Dempsey, the son-in-law who was also living in the home at the time, admitted that the cracks to the brick veneer existed prior to

---

[6] The Blankenships posit that the deposition testimony of Mrs. Blankenship, their daughter Jamee Dempsey, and their son-in-law Chris Dempsey support the conclusion that no cracking occurred until after the storm, but that is belied by the record. (Doc. # 37 at 15).

12

the storm: "that crack wasn't nearly as big right after the storm."  (Docs. # 37-5 at 1 and 43-2 at 3).

These statements, combined with Engineer Richardson's analysis and conclusions that earth movement and water runoff *over time* caused the cracking to the brick veneer and driveway, support State Farm's theory.  (Doc. # 32-5 at 5).  Reliance on Mr. Blankenship's testimony—on its own—is misguided.  While self-serving statements can be *part* of the evidence that creates a genuine issue of material fact, they cannot be the only evidence, especially when blatantly contradicted by the record.  *See Davis*, 951 F.3d at 749-50 ("[W]here self-serving testimony is blatantly and demonstrably false, it understandably may not create a *genuine* issue of material fact, thereby allowing a court to grant summary judgment.").

Naturally, Mr. Blankenship's self-serving testimony alone is insufficient to meet his burden of showing a genuine issue of material fact because it is contradicted on every front; if it were sufficient, then any plaintiff could use a self-serving affidavit to defeat a motion for summary judgment.  *See Alexander*, 576 F.3d at 558; *Sperber v. Nicholson*, 342 F. App'x 131, 132 (6th Cir. 2009) ("[The plaintiff's prima facie case thus relies on his own self-serving innuendo and speculation, which does not suffice to survive summary judgment."); *Coverdale v. Conley*, No. 1:19-CV-920, 2022 WL 950307, at *3 (S.D. Ohio Mar. 30, 2022), *aff'd,* No. 22-3378, 2023 WL 246831 (6th Cir. Jan. 18, 2023) ("Thus, when presented with competing narratives in a summary judgment motion, a court is not required to conclude a question of fact exists—it must carefully review the record to determine whether a genuine issue of material fact exists."); *Okojie v. Metro. Nashville Hosp. Auth.*, 584 F. Supp. 3d 543, 552 n.13 (M.D. Tenn. 2022), *appeal dismissed,* No.

22-5164, 2022 WL 3754859 (6th Cir. July 28, 2022) (noting that while self-serving statements should be considered in light of *Davis* they are met with "some additional scrutiny.").

In *Coverdale*, the district court upheld a magistrate judge's conclusion that summary judgment was appropriate because the magistrate reviewed the record and identified evidence *blatantly* contradicting the plaintiff's version of events within multiple records, to the extent that "no reasonable juror could credit his version." 2022 WL 950307, at *3. Here, the deposition testimony of the family of Mr. Blankenship, who were the only ones living at the home before and after the storm, as well as an engineer expert, blatantly contradict Mr. Blankenship's denial of any previous cracks. As such, summary judgment is appropriate.

More importantly, while the Blankenships disagree with State Farm as to *when* the earth began to move, the key issue remains—they have failed to provide an alternate explanation other than movement of the earth mixed with water runoff for the damage to the home. They have no evidence to support an alternate theory of causation; even Mr. Blankenship does not attempt to extrapolate a theory as to the cause of the cracking, he just states that it did not occur until after the storm. (Docs. # 32-7 at 1-2 and 37-2 at 15). Even if the cracking occurred after the storm, that does not explain the *cause* of the cracking, rather it debates the timeline of the onset of the earth movement. At the end of the day, the theory that the cracking was caused by earth movement combined with water runoff is the only one advanced and it is immaterial whether it occurred before or after the storm. State Farm has met its burden of showing that there is no genuine dispute of

14

material fact here; the Blankenships have failed to show the converse. *Sigler*, 532 F.3d at 483; *Alexander*, 576 F.3d at 558. Consequently, State Farm's motion is **granted**.

## IV.   CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)   Defendant's Motion for Partial Summary Judgment (Doc. # 32) is **GRANTED**;

(2)   Defendant's Motion to Exclude Plaintiffs' Proposed Expert, Tony Little (Doc. # 33) is **GRANTED**;

(3)   Defendant's Motion to Exclude Testimony by Vance Blair Regarding Causation (Doc. # 34) is **GRANTED**; and

(4)   As Defendant only sought partial summary judgment in its motion, the parties shall file a joint status report indicating the remaining claims in this matter within **twenty (20) days** from entry of this Order.

This 24th day of March, 2023.



Signed By:
*David L. Bunning*  DB
United States District Judge

K:\DATA\ORDERS\PikeCivil\2021\21-7 MOO re PMSJ and Motions to Exclude.docx